```
 1                    UNITED STATES BANKRUPTCY COURT

 2                         DISTRICT OF NEVADA

 3                         LAS VEGAS, NEVADA

 4   In re:  DON GROVER WHITE,      )  E-Filed:  11/23/10
                                    )
 5           Debtor.                )  Case No.
                                    )  BK-S-10-19402-LBR
 6   _____)  Chapter 11

 7

 8

 9

10

11                    TRANSCRIPT OF PROCEEDINGS
                                 OF
12            MOTION TO SET CONFIRMATION HEARING,
                          MOTION FOR ORDER,
13                    (1), APPROVING ADEQUACY
        OF DEBTOR DON GROVER WHITE'S DISCLOSURE STATEMENT;
14            (2), SETTING DEADLINES FOR BALLOTING;
      (2) SETTING DEADLINES FOR FILING OPPOSITION TO CONFIRMATION
15              OF THE PLAN OF REORGANIZATION;
                 AND, (4), SETTING A HEARING DATE
16               ON THE PLAN OF REORGANIZATION,
                                AND
17       MOTION TO SET DEADLINES FOR BALLOTING, NO. 103
                             VOLUME 1
18          BEFORE THE HONORABLE LINDA B. RIEGLE
                UNITED STATES BANKRUPTCY JUDGE
19
                    Monday, November 8, 2010
20
                          2:30 p.m.
21

22

23   Court Recorder:      Andrea Mendoza

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1    APPEARANCES:

 2    For the Debtor:           JAMES E. TILL, ESQ.
                                The Lobel Firm, LLP
 3                              840 Newport Center Drive
                                Suite 750
 4                              Newport Beach, California 92660

 5    For the Official          MICHAEL J. WALSH, ESQ.
      Committee of              Larson & Stephens, LLC
 6    Unsecured Creditors:      810 South Casino Center Boulevard
                                Suite 104
 7                              Las Vegas, Nevada 89101
                                (Proposed)
 8
                                RICHARD M. LORENZEN, ESQ.
 9                              Perkins, Coie, Brown & Bain, P.A.
                                2901 North Central Avenue
10                              Suite 2000
                                Phoenix, Arizona 85012
11                              (Proposed)

12    Also Present:             SULLIVAN RICHARDSON
                                Chief Financial Officer
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1         (Court convened at 02:34:56 p.m.)
2             THE COURT:  Be seated.
3      (Colloquy not on the record.)
4             THE COURT:  All right.  White.
5         Appearances, please.
6             MR. TILL:  Good afternoon, your Honor.  James Till on
7    behalf of the debtor, Don Grover White.
8             MR. WALSH:  Good afternoon, your Honor.
9    Michael Walsh, local counsel on behalf of the proposed counsel
10   for the Official Committee of Unsecured Creditors.
11            THE COURT:  Okay.
12            MR. LORENZEN:  Hello, Judge.  Richard Lorenzen,
13   Perkins, Coie, Brown & Bain, proposed counsel for the
14   committee.
15       Your Honor, we filed a verified petition with my name and
16   designation from local counsel last week, and I would like to
17   speak today if that's permissible.
18            THE COURT:  Yeah.  That's fine.
19            MR. LORENZEN:  Thank you, your Honor.
20            THE COURT:  Um-h'm.  Okay.  So let's go ahead, then.
21   Where are we with the disclosure statement?
22            MR. TILL:  Yeah.  Good afternoon, your Honor.  We're
23   here today for a hearing to approve the adequacy of the
24   debtor's disclosure statement, although I'd be remiss if I
25   didn't mention -- or I'm sure the Court is aware -- that on

1   Friday on the eve of this hearing the committee filed a motion
2   to appoint an examiner with a hearing date that's scheduled for
3   December 8th.
4       So to the extent that your Honor would like me to address
5   that in context --
6           THE COURT:  Well, shouldn't we --
7           MR. TILL:  -- with --
8           THE COURT:  Well, I do see that you haven't filed one
9   2015.3 statement.
10          MR. TILL:  I'm sorry?
11          THE COURT:  No.  You have not filed one 2015.3
12  statement.  In other words, the rules require you to file a
13  report in which every entity the debtor owns over the
14  20 percent, and you haven't filed one of them.
15      Doesn't the debtor still own a number of entities, more
16  than 20 percent of a number of entities?
17          MR. TILL:  He does, and they were listed.  I thought
18  we --
19          THE COURT:  Well, I understand, but read Rule 2015.3.
20          MR. TILL:  Okay.
21          THE COURT:  Do you have it with you?
22          MR. TILL:  I do not, your Honor.
23          THE COURT:  Okay.  2015.3 says, "In a Chapter 11
24  case, the debtor in possession shall file periodic financial
25  reports of the value, operations, and profitability of each

1   entity that is not a publicly-traded corporation or a debtor
2   and to which the estate holds a substantial or controlling
3   interest.
4         The report shall be prepared as prescribed by the
5   appropriate official form and shall be based upon the most
6   recent information reasonably available.
7         The first report shall be filed no later than seven days
8   after the first date set for the meeting of creditors and no
9   less than every six months thereafter," and we haven't had our
10  six months.
11        But, "For purposes of this rule, the entity in which the
12  estate controls or owns at least 20-percent interest shall be
13  presumed to be an entity in which the estate has a substantial
14  or controlling interest."
15             MR. TILL:  Your Honor, I am aware of that rule, and
16  we had discussions early on in the case when we were completing
17  the 7-day package and the 14-day package for the U.S. Trustee's
18  Office.
19        And we inquired as to that rule and whether we should
20  undertake proceeding to fill out, essentially, monthly
21  operating reports for each of those entities given the fact
22  that they really have no value.
23        And the U.S. Trustee acknowledged the rule, and we asked
24  if it's followed if anything is given particularly in this type
25  of situation.

1    And they just said all they would do is acknowledge the
2    rule, and they didn't say that they would require -- they did
3    not require it --
4         THE COURT:  Well --
5         MR. TILL:  -- for --
6         THE COURT:  -- but it's not their rule.
7         MR. TILL:  I understand that, your Honor.
8         THE COURT:  It's the court's rule.  Nobody asked me.
9         MR. TILL:  I understand, your Honor.
10        THE COURT:  And this is a case in which we've got all
11   these entities, and that's part of the examiner's questions.
12   If you had filed those reports, maybe they wouldn't now be
13   asking for an examiner.
14        MR. TILL:  Your Honor, if I may, we provided
15   background information and financial information for all of
16   those entities.
17      Many of the entities don't have projects that have any
18   value and/or there aren't even financials prepared for those
19   entities.
20      If I might step back just to give a little bit more
21   context to this case, Mr. White is a homebuilder.  He's been in
22   the business for over 20 years.
23      At the height of the market, he had approximately
24   16 projects in three different states, eight in Nevada, two in
25   Arizona, and six in Washington.

1        As of today, there are only three operating businesses,
2   and those are entities that are in Washington state, but the
3   others have either been foreclosed or shut down.  There are no
4   assets.
5        The projects, the dirt that represents those projects --
6            THE COURT:  Well, that's what you say now, but where
7   do we have that anyplace?
8            MR. TILL:  It --
9            THE COURT:  The disclosure statement doesn't even
10  clearly say that.
11           MR. TILL:  Your Honor, as amended, we believe it
12  does, and that information was also provided informally to the
13  committee over the last -- well, since September 7th, we have
14  been providing information to the committee.
15           THE COURT:  Well, what about the information on the
16  trust?  Did you do the 2015.3 on the trust?  There's no 2015.3
17  statements done at all.  You've done the monthly reports, but
18  no 2015s.
19           MR. TILL:  Right.  I believe BAW is referenced in
20  those monthly operating reports.
21           THE COURT:  Pardon?
22           MR. TILL:  But I don't know if we did a separate --
23           THE COURT:  You did not do a separate one.  I looked.
24           MR. RICHARDSON:  We gave all -- as of June 30, we
25  gave all June 30 financials including BAW to the committee.

1      THE COURT:  But it wasn't filed with the court.
2   Can you make your appearance, please --
3      MR. TILL:  This is --
4      THE COURT:  -- for the record.  He needs to state his
5   name --
6      MR. TILL:  Oh.
7      THE COURT:  -- for the record up in the microphone.
8      MR. RICHARDSON:  My name is Sullivan Richardson.  I'm
9   Mr. White's chief financial officer, and we have provided the
10  committee the June 30 financials on all of the entities at
11  their request.
12     THE COURT:  Okay.  But it's not on file.
13     MR. TILL:  With the court?
14     THE COURT:  Right.
15     MR. RICHARDSON:  Not with the court, but we provided
16  the committee some, so --
17     THE COURT:  I mean, this report is useless for
18  telling us what these other entities have or don't have.
19     (Colloquy not on the record.)
20     THE COURT:  I mean, I recognize it's a -- well, the
21  rule has been in effect I think a year now, and I certainly
22  understand that format may not fit all.
23     But, you know, if you don't like it, then come to the
24  Court and ask to modify it.  Don't just don't do it especially
25  in a case like this where this is a substantial issue.  Why

1  shouldn't I defer this until after the hearing on the examiner?
2          MR. TILL:  Your Honor, typically, you'll see the
3  debtor dragging its feet during the bankruptcy process or you
4  can see that, and we feel that this is an instance where we
5  really want to proceed to confirmation as quickly as possible.
6      We believe that the appointment of an examiner is
7  inappropriate and improvident in these circumstances.  This
8  isn't a large corporate case.  The transactions are not that
9  complex.
10         THE COURT:  Well, you got 80,000,000 in unsecured
11 debt.
12         MR. TILL:  Your Honor, it's all personal.  It all
13 originates --
14         THE COURT:  I understand.
15         MR. TILL:  -- with --
16         THE COURT:  But 80,000,000 is 80,000,000.  I mean,
17 I'm sorry.  80,000,000 is 80,000,000.  I understand what it
18 arose from, but it arose from a business.  He guaranteed it,
19 but it's 80,000,000.
20         MR. TILL:  I understand that, your Honor.  And if I
21 may, the examiner -- having an examiner step in at this point
22 is just going to add another layer of administrative costs and
23 delay to this case.  And given --
24         THE COURT:  Well --
25         MR. TILL:  -- where we --

```
 1              THE COURT:  -- unsecureds aren't getting anything,
 2    anyway, so what difference --
 3              MR. TILL:  Well, they're --
 4              THE COURT:  -- does it make?
 5              MR. TILL:  Your Honor, we're proposing to pay them
 6    the value in the estate over the course of the plan.
 7              THE COURT:  2.4 percent --
 8              UNIDENTIFIED SPEAKER:  That's all there is.
 9              THE COURT:  -- which they get on liquidation, right?
10              MR. TILL:  Without interest.
11              THE COURT:  Right.
12              MR. TILL:  And the potential for an upside if in a
13    plan.
14              THE COURT:  I mean, I don't see any reason why we
15    need to rush this through.  You tried to rush this through in
16    the beginning, and I said no because I wanted a committee.
17    There's --
18              MR. TILL:  Correct.
19              THE COURT:  There's no business -- there's no need to
20    rush this through especially if the committee doesn't want to
21    rush it through.  Let me hear what the committee has to say.
22         Any comments from the committee?
23              MR. LORENZEN:  Yes, your Honor.  We don't want to
24    rush this through.
25         (Colloquy not on the record.)
```

1    MR. LORENZEN:  The committee members have received
2    hundreds of pages of documents, but it's very, very complicated
3    or it appears that it may be very, very complicated, the inner
4    machinations of transfers between and among the trusts, the
5    debtor, and the various businesses.
6        And the people on the committee are not financial analysts
7    or accountants, and they feel a duty, understandably, to get
8    somebody, an independent examiner, or falling short of that
9    independent financial professionals --
10           THE COURT:  Oh, have you thought about --
11           MR. LORENZEN:  -- to look at this.
12           THE COURT:  -- retaining a --
13           MR. LORENZEN:  We're looking for people who could --
14           THE COURT:  Besides an examiner and the committee
15    retaining an expert.
16           MR. LORENZEN:  Yes.  And we're exploring that in
17    conjunction with the filing of the motion for examiner to see
18    if there's an intermediate type of ground that we could find
19    because we don't want to run up expenses for this estate.
20        But they do feel duty-bound as representatives of the
21    unsecured creditors to dig in here in a professional manner and
22    find out what's beneath the surface.
23        And so we think that it should -- I mean, the disclosure
24    statement as it currently stands, certainly, because of timing
25    doesn't and couldn't reference the filing of the motion for the

1    examiner.
2        And we're either I think going to have an examiner under
3    the mandatory appointment provision or we're going to strike a
4    deal to get an independent professional, and the findings of
5    that person are going to be relevant to the disclosures in our
6    view, your Honor.
7            THE COURT:  Okay.  And I guess, you know -- I'm
8    sorry.  The person that just spoke -- I don't see any retention
9    of a financial expert by the debtor, so is the debtor paying,
10   Mr. -- is it Richards (sic)?  I'm sorry.
11           MR. RICHARDSON:  Richardson.
12           THE COURT:  Sorry?
13           MR. RICHARDSON:  What was your question?
14           THE COURT:  What was your name again?  I'm sorry.
15           MR. RICHARDSON:  Richardson.
16           THE COURT:  Richardson.
17       So how is Mr. Richardson the financial adviser of the
18   debtor?  I don't see any application for employment.
19           MR. TILL:  He is not the CFO for the debtor.
20           MR. RICHARDSON:  Not for the debtor.  For the
21   companies.
22           THE COURT:  What companies?  I mean, the very
23   companies that we don't know about in here, I mean --
24           MR. TILL:  No.  The --
25           THE COURT:  -- the companies that aren't worth

1    anything?
2            MR. TILL:  The companies that -- the three companies
3    that are still operating projects in Washington.
4            THE COURT:  Well, we certainly --
5            MR. TILL:  Your --
6            THE COURT:  -- don't have much information about the
7    profitability of those.
8            MR. TILL:  Of --
9            THE COURT:  Well, I'm not going to approve the
10   disclosure statement today.  I think it's too early.  I'll
11   continue this 'til the December 8th date.
12           MR. RICHARDSON:  Your Honor --
13           THE COURT:  I really don't need to hear anything
14   more.  I will trust what you're telling me.  That you relied on
15   the U.S. Trustee saying you don't need to file those reports,
16   but I think --
17           MR. TILL:  Well --
18           THE COURT:  -- you do.
19           MR. TILL:  -- your Honor, they didn't.  I want to be
20   clear.  They did not say you don't need to provide them.  We
21   inquired whether anyone does for entities like that in this
22   circumstance and in this locale, and they said the rule is what
23   the rule is, but they don't require them.
24           THE COURT:  Okay.
25           MR. TILL:  And we didn't because there is no --

1    there's essentially no assets.  There's de minimis value in
2    those entities.
3              THE COURT:  Well --
4              MR. TILL:  We didn't want --
5              THE COURT:  Well, we're paying Mr. Richardson
6    somehow.  We're paying him from some company, so there are some
7    companies that obviously have something in them.
8              MR. RICHARDSON:  Yes.  It's disclosed in the
9    disclosure statement that Adaven Construction Corporation is
10   providing accounting services.  It's the only company that
11   still has a de minimis value.
12        But, your Honor, I'd also like to state that the creditors
13   in their files did a substantial underwriting of Mr. White.
14   They understand the whole structure.
15        They've looked at the company and Mr. White for years, and
16   so it's a little disingenuous for them to say it's too
17   confusing for them --
18             THE COURT:  Well, I --
19             MR. RICHARDSON:  -- to --
20             THE COURT:  That does surprise me.  I mean, you don't
21   get $80,000,000 in guarantees unless you've dealt with some of
22   these lenders, but I certainly don't get a good sense of what
23   happened other than the business failed.
24        I mean, it's certainly better than it was, but this
25   disclosure statement just doesn't tell me enough, so we'll

1    continue it 'til the -- I won't disapprove it.  I'll just
2    continue it 'til December 8th.
3        Is that the date you said you had for your hearing?
4           MR. LORENZEN:  Yes, your Honor.
5           THE COURT:  Okay.
6           THE CLERK:  At 2:00 o'clock.
7           THE COURT:  At 3:00 o'clock?
8           THE CLERK:  2:00.
9           THE COURT:  2:00.  Okay.
10          MR. TILL:  Your Honor --
11          THE COURT:  And if you could file at least one 2015
12    by then with it --
13          MR. TILL:  Okay.
14          THE COURT:  -- for each of the entities.
15          MR. TILL:  Okay.  Your Honor, we would believe that
16    -- we believe it's beneficial to meet with the committee.
17    We've been --
18          THE COURT:  Sure.
19          MR. TILL:  -- trying.
20          THE COURT:  Of course.  But you guys can do that
21    without me.  I mean, that's what --
22          MR. TILL:  We --
23          THE COURT:  -- you're all supposed to do.
24          MR. TILL:  Right.  We've been trying, your Honor.
25          THE COURT:  And I don't know why the committee

1  hasn't.  Maybe it's because they just now were able to engage
2  counsel.
3       And, you see, part of the problem was when you guys came
4  running in here the first day wanting confirmation right away,
5  you kind of cut off your nose to spite your face because you
6  never had a chance for the committee to get formed and have
7  some input.
8       You don't want me as the attorney for the creditors
9  committee.  You want an attorney for the creditors
10 committee.
11      So when you come rushing in here and demanding
12 confirmation that first day, you really did yourself a
13 disservice, so okay.
14      So we'll continue this to December 8th, and I would hope
15 that you all get together.  I don't think a settlement
16 conference works.  I think you should all talk together first.
17      If somehow a settlement conference works -- they're hard
18 in these Chapter 11s, but that's certainly something you might
19 contemplate.
20           MR. LORENZEN:  We also want to communicate with them,
21 and we've been working on that.
22           THE COURT:  Okay.  So make sure you do.
23           MR. TILL:  Okay.
24           THE COURT:  All right.  Thank you very much.
25           MR. TILL:  Thank you, your Honor.

```
1              MR. LORENZEN:  Thank you, your Honor.
2              THE COURT:  Um-h'm.
3              MR. RICHARDSON:  Thank you.
4              THE CLERK:  All rise.
5         (Court concluded at 02:49:00 p.m.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1     I certify that the foregoing is a correct transcript
2     from the electronic sound recording of the proceedings in
3     the above-entitled matter.
4
5
6     /s/ Lisa L. Cline                              12/22/10
      _____            _____
7     Lisa L. Cline, Transcriptionist                  Date